United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DIANE KIMBERLY SEYMOUR,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>Defendant. | Case No. 17-cv-00605-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 20, 28 |

Plaintiff Diane Kimberley Seymour seeks judicial review of an administrative law judge ("ALJ") decision denying her application for benefits under Title II of the Social Security Act. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. (Administrative Record ("AR") 16-18.) The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 6, 10) and both parties have moved for summary judgment (Docs. 20, 28). For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff filed her initial application for Title II benefits on August 23, 2011, alleging disability commencing July 1, 2005. (AR 326-32.) The alleged onset date was amended at the second hearing to August 1, 2010. (AR 51.) Plaintiff's application was initially denied on December 5, 2011. (AR 202-06.) Plaintiff filed a request for hearing with an ALJ on July 19, 2012. (AR 214.) A hearing was held on May 22, 2013. The ALJ issued an unfavorable decision on July, 23, 2013. (AR 173-93.) A request for review by the Appeals Council resulted in an order of remand dated February 2, 2015. (AR 194-97.) A second hearing was held on August 24, 2015, which resulted in a denial dated November 23, 2015. (AR 19-38.) Plaintiff requested review by the Appeals Council on January 22, 2016. (AR 16-18.) The request for review was denied on December 8, 2016. (AR 1-6.)

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.1.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five-step sequential evaluation process to determine whether the claimant is disabled (*see id*. §

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will only cite to the SSI regulations herein unless noted otherwise.

2

416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation. (AR 19-38.)

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity "from her alleged onset date of July 1, 2005 through her date last insured of December 31, 2012."[2] (AR 24.)

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the cervical and lumber spine, degenerative joint disease of the bilateral hips, mild osteoarthritis of the right shoulder, mild bilateral carpal tunnel syndrome, mild to moderate cervical radiculopathy, fibromyalgia, and obesity. (AR 25.) The ALJ further found that Plaintiff suffered from the following non-severe medically determinable impairments: gastroesophageal reflux disease, chronic obstructive pulmonary disease, depressive disorder, and anxiety disorder. (AR 25-26.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id.* If the claimant is successful, a disability is presumed and benefits are awarded. *Id.* If the claimant is unsuccessful,

---

[2] As stated above, the alleged onset date was amended at the second hearing to August 1, 2010. (AR 51.)

3

proceeds to Step Four. *See id.* § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 27.)

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the complaint has the RFC to perform the requirements of his past relevant work. *See id*. § 416.920(e) and 416.945. The ALJ assessed Plaintiff as having retained the RFC to perform work as defined in 20 C.F.R. 404.1567(b) except that: Plaintiff should not have climbed ladders, ropes, or scaffolds; she could have occasionally performed all remaining postural activities; she required a sit-stand option at will; she should not have performed overhead work; she was limited to frequent reaching, handling, and fingering; she could not have performed power squeezing or gripping of hand tools; and she should not have worked at heights or with heavy or hazardous machinery for safety reasons. (AR 28.) In regard to past relevant work, the ALJ determined that through the date last insured, Plaintiff was capable of performing her past relevant work as a clerical assistant.

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. *See id*. §416.920(g). If the claimant is able to do other work, she is not disabled. The ALJ determined that Plaintiff was capable of performing past relevant work as of December 31, 2012, and that other jobs existed in significant numbers in the national economy that she would also have been able to perform. (AR 36-37.) The ALJ concluded Plaintiff had not been under a disability, as defined in the Social Security Act between July 1, 2005, and December 31, 2012, the date last insured. (AR 37.)

**DISCUSSION**

Evaluation of Impairments

Plaintiff contends that the ALJ committed harmful legal error by improperly evaluating her severe and non-severe impairments. First, Plaintiff contends that the ALJ erred in finding that her chronic obstructive pulmonary disease ("COPD") was non-severe. Plaintiff argues that the ALJ inappropriately determined that her COPD was not severe because she smokes half a pack of cigarettes per day. That argument is based on an incomplete description of the ALJ's finding in

4

regard to COPD. The ALJ stated at the outset, "[a]side from exacerbations in her respiratory symptoms of September 20, 2005, September 18, 2007, and February 27, 2009 (Exh. 3F/34, 53; Exh. 23F/16), the claimant routinely exhibited normal breathing sounds on physical examination during the period through December 31, 2012 (Exh. 1F/7; Exh. 3F/65, 67, 95; Exh. 4F/49, Exh. 5F/5; Exh. 11F/4; Exh. 12F/5; Exh. 25F/1) and pulmonary functioning testing of January 22, 2013 yielded unremarkable results (Exh. 24F/2)." (AR 26.) Thus, the ALJ began his discussion of COPD with a review of Plaintiff's medical records. These records constitute substantial evidence in support of the ALJ's finding that Plaintiff's COPD did not constitute a severe impairment. It was not until after reviewing the medical records that the ALJ noted that despite multiple recommendations by her treating sources to pursue smoking cessation treatments, the record showed that Plaintiff's cigarette usage fluctuated between roughly one-half to one pack during the time period of July 1, 2005, to December 31, 2012. (AR 26.) Thus, contrary to Plaintiff's argument, the ALJ did not "determine[] that [Plaintiff's] COPD is not severe because she smokes half a pack of cigarettes per day." Rather, the ALJ made that determination based on both the medical record and Plaintiff's failure to stop smoking despite recommendations from her treating sources that she do so. *See Hurter v. Astrue*, 465 F.App'x 648, 650 (9th Cir. 2012) (unpublished) (claimant's "failure to follow prescribed treatment without adequate explanation is also relevant to a credibility analysis"). Because Plaintiff's medical records amount to substantial evidence sufficient to support the ALJ's finding that the COPD was non-severe, any error by the ALJ in addressing credibility at Step Two was harmless.

Second, Plaintiff contends that the ALJ erred in finding that her gastroesophageal reflux disorder ("GERD") was non-severe. Plaintiff summarizes the medical records in connection with this condition, and argues that they show a chronic condition that was not properly evaluated for impact on functional capacity to work.

The ALJ discussed the evidence cited by Plaintiff in his decision. In addressing Plaintiff's GERD, the ALJ explained that despite Plaintiff's emergency visits and complaints related to her GERD symptoms, an ultrasound performed in 2005 revealed only moderate reflux and mild inflammatory changes. (AR 25, 536.) In addition, the ALJ explained that emergency treatment

5

notes indicated that the evaluating doctor found that despite her complaints of GERD symptoms, Plaintiff "lack[ed] many symptoms that would make [her pain] more concerning." (AR 25, 576.) Plaintiff's treating physician also only indicated mild to moderate abdominal tenderness. (AR 25, 565.) The ALJ also referenced that despite numerous appointments, overall Plaintiff had conservative and less than frequent treatment/complaints with respect to her GERD symptoms. (AR 25, 573.) The ALJ also noted that Plaintiff's examination showed no abnormalities and that she had no abdominal tenderness throughout 2011. (AR 25, 585, 591, 593, 598, 601.) *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative course of treatment suggested "a lower level of both pain and functional limitation"). Moreover, the ALJ observed that Plaintiff had admitted that over the counter medication helped her symptoms. (AR 25, 917, 939.) *See Warre v.Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"), citing *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). Further, Plaintiff fails to explain how her alleged constipation leads to work-related limitations.

"When evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004). The court finds that the medical record constitutes substantial evidence in support of the ALJ's decision, and that Plaintiff's disagreement with that decision does not demonstrate error.

Third, Plaintiff contends that the ALJ erred in finding that her mental impairments were non-severe. Plaintiff argues that the record is "replete" with the history of diagnosis, treatment and prescriptions for treatment of anxiety. She provides, *inter alia*, fifty-three citations to pages in the record where anxiety is "mentioned by treatment, history or prescription," two citations to the record where anxiety is listed as a major problem on medical progress notes (AR 823, 922), and one citation where anxiety is referred to as a "significant contributor to her pain" along with depression. (AR 845.) Plaintiff similarly provides thirty-four citations to pages in the record where depression is discussed, including four pages at which Plaintiff's depression is described as

severe (AR 621, 628, 671, 672), and eleven pages at which it is described as "significant."

The ALJ performed the required analysis to determine if Plaintiff's mental impairments were severe under the Paragraph "B" criteria. (AR 26-27.) 20 C.F.R. Part 404, Subpt. P, App. 1. For the first functional area, activities of daily living, the ALJ found that Plaintiff had a mild limitation. (AR 26.) Plaintiff did household chores, performed light housework, prepared simple meals, shopped for groceries, made crafts, was independent in personal care, drove independently, and took college courses for a considerable portion during the relevant time period. (AR 26, 105, 124-25, 405-07, 459, 495.) *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (although the claimant asserted that he was "confined primarily to resting and reclining about his own home," he testified that "he remains capable of caring for all his own personal needs, the performance of his own routine household maintenance and shopping chores, riding public transportation, and driving his own automobile.")

Regarding the second functional area of social functioning, the ALJ found only mild limitations. (AR 26.) The ALJ acknowledged that Plaintiff had decreased social activities, but had friends in school, cut hair for her friends, had no problems getting along with others and regularly communicated with others. (AR 26, 3125, 134, 81-83, 407-09.)

Regarding the functional area related to concentration, persistence and pace, the ALJ found only a mild limitation. (AR 27.) Here, the ALJ explained that despite Plaintiff's self-reports of decreased concentration, inability to finish projects or follow directions, she had "B" grades in school, she cared for her disabled husband and completed forms for disability with no signs of difficulty with understanding, coherency or concentration. (AR 27, 373, 408, 463-67.) *See Williams v. Comm'r of Soc. Sec.*, 494 F.App'x 766, 767-68 (9th Cir. 2012) (unpublished) (while claimant may have had difficulty participating in his brother's and operating his own business, the evidence did not show he was incapable of simple types of tasks, as the brother claimed, where claimant took community college courses and his transcript reflected grades of A's and B's); 20 C.F.R. § 404.1529(c)(3), ("We will consider ... observations by our employees and other persons").

7

Plaintiff argues that the references in the record to anxiety and depression support severity of her symptoms. However, as Defendant argues, mere references in the record to anxiety and depression does not establish that Plaintiff's mental impairments were severe. Those records do not mention any mental status findings indicating severity of Plaintiff's mental impairments. Rather, they are simply a recitation of Plaintiff's problems/issues. (AR 823, 922.) Further, the ALJ referenced several mental status examinations that showed no significant issues with memory or mental functioning. (AR 27, 593, 598, 600-01, 607, 617, 621, 633, 684, 692, 720, 724, 726.) This citation of mental status findings supports the ALJ's assessment that Plaintiff's mental impairments were not severe.

Moreover, as the ALJ correctly observed, Plaintiff admitted that she did not have mental health treatment. (AR 26, n.1, 62.) *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors" . . . including "unexplained or inadequately explained failure to seek treatment"). In addition, each of the State agency doctors opined that there were no severe mental impairments, which the ALJ properly relied upon. (AR 35, 160-61, 168-69.) *Thomas*, 278 F.3d at 957 ("The opinions of non-treating or nonexamining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"); *see also Bason v. Comm'r of Soc. Sec.*, 475 F.App'x 217, 218 (9th Cir. 2012) (unpublished) (ALJ properly found that claimant's depression was not severe, where an examining psychologist and a non-examining reviewing psychologist both concluded that her depression did not impose a significant limitation on her ability to work or function, and claimant "never reported to any physician that her depression prevented her from working.").

Accordingly, there was substantial evidence to support the ALJ's finding that Plaintiff's medically determinable mental impairments of a depressive disorder and an anxiety disorder, considered separately and in combination, did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities through December 31, 2012. The court finds that Plaintiff has failed to demonstrate error in regard to the ALJ's evaluation of her mental impairments.

At the end of the ALJ's Step 2 analysis of Plaintiff's severe and non-severe impairments,

the ALJ stated: "[a]lthough the claimant had non-severe impairments, the undersigned has considered all the claimant's medically determinable impairments at the remaining steps of the disability determination process, regardless of their severity." Therefore, the court rejects Plaintiff's several claims that the ALJ failed to consider her non-severe impairments in later steps of the disability analysis, whether alone or in combination with other impairments. Plaintiff quotes the holding in *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) that, "[a]n ALJ must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." However, Plaintiff identifies no specific medical assumptions regarding her non-severe impairments that are supported by substantial evidence in the record. Plaintiff's assertions regarding "minimal and obviously necessary" restrictions for COPD do not constitute substantial evidence.

After considering all of the parties' arguments, the court finds no error in the ALJ's evaluation of Plaintiff's severe and non-severe impairments.

<u>Weight Given to Treating Physicians' Opinions</u>

In its order remanding this case to the ALJ, the Appeals Council found that the date last insured had been extended from March 31, 2010, to June 30, 2011, and that there was an unadjudicated period for those 15 months. (AR 195.) During the original proceeding, the ALJ had given little weight to the opinions of Dr. Bailey dated September 29, 2011, and June 12, 2012, indicating that Plaintiff was unable to work, in part because Dr. Bailey did not start treating Plaintiff until nearly a year after the original last insured dated. The Appeals Council therefore found that further evaluation of the opinion and treatment notes of Dr. Bailey in light of the new last insured dated was warranted.

Plaintiff contends that the ALJ erred in giving the opinions of Dr. Bailey, her treating physician, little weight. Plaintiff argues that the reasons given by the ALJ for doing so are not specific enough to meet the required standard.

"In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [their] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Courts "distinguish between among the opinions of three

9

types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id*. (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). An ALJ "may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). However, where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Clear and convincing reasons are also required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the fact and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ performed an exhaustive evaluation of the multiple medical opinions regarding diagnoses, prognoses, and current limitations, as required by SSR 96-2. (AR 28-36.) On May 31, 2013, Dr. Bailey filled out a medical source statement stating that Plaintiff could not sit for at least six hours during an eight-hour workday; could not stand and walk for two to four hours during an eight-hour workday; could not frequently handle, reach, and finger; could not lift 10 lbs. or less; and could not sustain full-time employment. (AR 880-81.) Contrary to Plaintiff's contention, the ALJ provided several reasons to discount Dr. Bailey's limitations in this medical source statement. First, the ALJ found that Dr. Bailey provided no explanation for her conclusions through her May 31, 2013 medical opinion and included no rationale to substantiate her conclusions through her September 29, 2011 medical opinion aside from listing Plaintiff's diagnosis and symptoms. (AR 35.) *See Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (an

ALJ may "permissibly reject[ ] ... check-off reports that [do] not contain any explanation of the bases of their conclusions") (quotation omitted); *Batson*, 359 F.3d at 1193 (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by objective medical findings); *Young v. Heckler*, 803 F.2d at 967-68 (treating doctor's report is "lacking in clinical detail" and "sheds little light on the nature of appellant's claimed disability," in that the "report contains few clinical findings).

Second, the ALJ noted the inconsistency of Dr. Bailey's statement regarding Plaintiff's alleged onset date. (AR 35, n. 5, 687, 880.) In her May 31, 2013 opinion, Dr. Bailey indicated that Plaintiff would have experienced work-precluding limitations beginning no later than February of 2011. (AR 35.) However in her September 2011 opinion, Dr. Bailey suggested that Plaintiff would have first experienced these limitations in September 2011. (*Id*.) The ALJ found that the inconsistency in Dr. Bailey's opinions "notably diminishes their probative value." (*Id*.) The court agrees and finds that this inconsistency is a legitimate reason for rejecting Dr. Bailey's statements. 20 C.F.R. § 404.1527(c)(6)("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion"); *Morgan v. Comm'r*, 169 F.3d 595, 603 (9th Cir. 1999) (internal inconsistencies within a doctor's report constitutes a legitimate basis for rejecting report).

Third, the ALJ explained that Dr. Bailey's 2011 statement that Plaintiff would have experienced disabling limitations are belied by the fact that two days earlier, he reported that Plaintiff had no abnormalities upon physical examination except tenderness and limited range of motion. (AR 35, 692.)

Four, the ALJ found that Plaintiff's hearing testimony called into question the thoroughness of Dr. Bailey's examinations. (AR 35, 46.) Finally, the ALJ also noted that Dr. Bailey's assessment conflicts with Plaintiff's actual abilities to engage in activities of daily living – including working part-time and attending college courses for culinary school. (AR 35, 102-110.) Contrary to Plaintiff's contention, the ALJ specifically stated what portions of Plaintiff's testimony was persuasive and why and what statements of Plaintiff's subjective pain testimony

11

were not supported by the medical evidence with specific references to the record (AR 29-34).

In addition, Dr. Bailey's statement that Plaintiff was not able to work in relation to her state disability claim was also unsupported by any medical findings or evidence. (AR 686-87.) Further, the ALJ is not required to accept Dr. Bailey's conclusory statement regarding Plaintiff's ability to work, as that is an issue expressly reserved to the Commissioner. 20 C.F.R. § 404.1516 (d)(1); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) ("Conclusory opinions by medical experts regarding the ultimate question of disability are not binding on the ALJ").

In summary, the ALJ discussed the relevant medical evidence and testing by Dr. Bailey and assessed a RFC that was consistent with the record as a whole. (AR 31.) *Magallanes v. Bowen,* 881 F.2d 747, 755 (9th Cir. 1989) (the specific and legitimate standard was met where the ALJ "summarized the facts and conflicting clinical evidence in detailed and thorough fashion, stating his interpretation and making findings"). The ALJ did not ignore Plaintiff's positive findings, but as Plaintiff acknowledges, included the various positive and negative findings in the decision. (Pl. Br. at p. 15; AR 30-31.) For example, the ALJ noted that Dr. Bailey noted pain with range of motion activity at the lumbar spine, pain with heel and toe standing, and positive straight leg raise testing, but full range of motion and no tenderness at the hips, intact motor strength, symmetric reflexes, and intact sensation. (AR 591, 593, 600-01.) While Dr. Bailey noted spasms, tenderness and a positive straight leg raise test, at the same time Plaintiff had no tenderness over the spine, hips, no swelling or joint deformation and had normal sensation. (AR 31, 598, 606-07, 616-17, 692, 724.) The ALJ also noted negative findings, including normal gait, intact heel and toe standing, negative straight leg raise test, negative Patrick's test, normal sensation and symmetric reflexes. (AR 31, 616, 671-72.) The ALJ acknowledged and found some of Plaintiff's subjective allegations credible and included this in the RFC finding. (AR 31-33.) As a result, the RFC was based on the entire medical evidence and was supported by the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 404.1520c; *Brewes v. Comm'r of Soc. Sec. Admin*., 682 F.3d 1157, 1161-62 (9th Cir. 2012) (court must assess the record as a whole and determine whether the ALJ''s decision is supported by substantial evidence).

The court has considered all of the arguments of the parties and finds that the ALJ

12

followed the instructions of the Appeals Council on remand to assess Dr. Bailey's opinion including up to the date of last insured. The court further finds that the ALJ provided clear and convincing reasons for affording less weight to the functional limitations Dr. Bailey assessed in the medical source statement.

## CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment is DENIED and Defendant's motion for summary judgment is GRANTED.

A separate judgment will issue.

**IT IS SO ORDERED.**

Dated: August 7, 2018

ROBERT M. ILLMAN
United States Magistrate Judge

13